UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | CIVIL NO. 3:01CV1881(JBA) |
| v. | : | |
| | : | |
| LORNA SMITH a/k/a LORNA WOOLCOCK a/k/a PATRICIA SMITH, d/b/a MATHER'S DELI, | : | |
| | : | |
| Defendant. | | JULY 7, 2004 |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR DEFAULT AND DEFAULT JUDGMENT**

The plaintiff, the United States of America, has moved pursuant to Rules 55(a) and (b), Fed. R. Civ. P., and pursuant to the Court's "Notice to Defendant" and "Endorsement Order [Doc. #30]," see filing nos. 31 & 32, for default and default judgment against the defendant, Lorna Smith a/k/a Lorna Woolcock a/k/a Patricia Smith, d/b/a Mather's Deli. For all of the reasons that follow, the motion should be granted.

**I.  Background**

**A.    The Federal Food Stamp Program**

The United States brought suit in October of 2001 seeking damages and penalties for defendant's alleged acts of fraud against the Government through the illegal trafficking of food stamp benefits. The United States established the Food Stamp Program ("FSP") in order to provide a more nutritious diet for its citizens living in low-income households. 7 U.S.C. § 2011; 7 C.F.R. § 271.1(a). The FSP is administered by the Food and Nutrition Service ("FNS") of the United States

Department of Agriculture. 7 C.F.R. § 271.3. Under the FSP, individuals with incomes below a certain threshold may apply and become eligible for an allotment of food stamp benefits, which can then be used to purchase certain food items at authorized retail food stores. 7 U.S.C. § 2013(a). The store owners can then redeem the food stamps for face value from the Government. Id.

In 1997-98 the FNS began to replace paper food stamp coupons in Connecticut with electronic benefit transfer ('EBT") cards. See generally 7 U.S.C. § 2026(f)(indicating establishment of pilot program to substitute "intelligent benefit cards" for paper coupons); see also 7 C.F.R. § 271.2 ( definition of "coupon" includes EBT cards); Attachment A hereto, Affidavit of Special Agent Angel Plaza ("Plaza Affidavit"), ¶ 6. EBT cards operate similar to debit cards; at the beginning of each month, a food stamp recipient's card is credited with a dollar amount of benefits for that month. Complaint, ¶ 5. As an eligible purchase is made, the retailer runs the EBT card through the EBT terminal in the authorized retailer's store, and the amount of the purchase is deducted from the recipient's card. Id. ¶ 5. In addition, the amount of the purchase is electronically credited to the retailer's bank account, via previous arrangements established between the retailer and the FNS. Id.

Under the strictures of the FSP, retail food store owners may not accept food stamp benefits as payment for ineligible items such as alcohol and tobacco products. 7 C.F.R. § 271.2 (definition of "eligible foods"); see also Plaza Affidavit, ¶ 7. Moreover, it is illegal for a retailer to exchange food stamp benefits for cash. Such an exchange, usually at a discounted rate, constitutes trafficking in food stamps. 7 C.F.R. § 271.2 (definition of "trafficking"); see also id. § 278.2(a).

**B.    Defendant's Illegal Conduct**

As part of a criminal investigation into food stamp fraud in Connecticut in the year 2000, federal and state law enforcement personnel began an investigation into food stamp transactions

taking place at Mather's Deli, defendant's store in Hartford. Complaint, ¶ 10; see also Plaza Affidavit, ¶ 8. The investigation uncovered that illegal trafficking in food stamp benefits was occurring at the defendant's store. Complaint, ¶ 12. The defendant and her employees participated in widespread and pervasive EBT trafficking, and the money for the fraudulent transactions was electronically transferred to the defendant's account at Fleet Bank. Id. ¶¶ 14,15, 25; see also Plaza Affidavit, ¶ 8.

The United States alleges in the first count of its complaint that the trafficking violated the False Claims Act because the defendant knowingly presented, caused to be presented, or submitted false or fraudulent claims to the FSP for payment. Complaint, ¶ 26 (citing 31 U.S.C. §§ 3729(a)(1) and (2)). In the second count of its pleading, the United States alleges that the defendant's trafficking constituted common law fraud. Complaint, ¶¶ 27-30. Finally, in count three, the United States alleges that the defendant has been unjustly enriched by her trafficking and the filing of false claims. Id. ¶ 31. As to the False Claims Act count, the United States seeks treble damages, plus mandatory penalties for each false claim. Id., Ad Damnum. The United States seeks single damages, and any other cognizable relief, as to the state law causes of action. Id.

**C.     Plaintiff's Motion for Summary Judgment**

On November 8, 2002, the United States moved for summary judgment in this matter. See filing nos. 21-23. The United States contended, in part, that the defendant admitted in both her answer to the complaint and her deposition testimony that she had trafficked in FSP benefits. The defendant admitted in her answer that it is illegal to exchange food stamp benefits for cash. Answer, ¶ 9. Significantly, the defendant also admitted that she personally engaged in food stamp trafficking

and that she is liable for the unlawful transactions occurring at her store. Id. ¶¶ 14, 16, 17, 20, 21.[1] The defendant further admitted that she violated the False Claims Act, that she submitted claims that constituted common law fraud, and that she was unjustly enriched. Id. ¶¶ 26, 27, 28, 31.

The defendant was deposed on May 31, 2002. She admitted during the deposition that she had engaged in food stamp benefits trafficking once or twice a week. See Memorandum in Support of Plaintiff's Summary Judgment Motion ("Plaintiff's Summary Judgment Memo"), Attachment A thereto, Declaration of William A. Collier, Exhibit 1 at 32-36. While the United States contended that the level of the defendant's trafficking was substantially higher than the once or twice a week she conceded, see Complaint, passim, the United States was willing, for purposes of its summary judgment motion, to accept the defendant's admission as the basis for calculation of civil penalties to be levied in this matter. See Plaintiff's Summary Judgment Memo at 5-8.

The defendant failed to respond to the summary judgment motion and, on December 27, 2002, the Court issued an endorsement order granting the motion. See filing no. 24. Judgment entered on the docket for the United States on December 31, 2002. See filing no. 25. However, neither the endorsement order nor the judgment specified a damages sum.

**D.    Plaintiff's Motion to Alter or Amend Judgment**

On January 7, 2003, the United States moved pursuant to Rule 59(e), Fed. R. Civ. P., to alter or amend the judgment to include a damages sum. See filing no. 26. On May 8, 2003, the Court issued its "Endorsement Order [Doc. #26]" granting in part plaintiff's motion to alter or amend judgment. According to the Court, the "[j]udgment is vacated and the case is reopened for the

---

[1] Though the defendant pleaded insufficient knowledge of the specific dates, times, and amounts of the illegal activity, she did not deny that the trafficking took place or that she personally engaged in trafficking. Answer, ¶¶ 14, 20.

limited purpose of evidentiary submissions to establish the amount of civil penalties." See Endorsement Order [Doc. #26] at 1. At the plaintiff's request, the Court subsequently referred the case to a Magistrate Judge for purposes of conducting an evidentiary hearing on damages. See filing no. 29.

E.  **Present Procedural Posture of Case**

On December 11, 2003, plaintiff's counsel, Attorney Richard S. Cramer, moved to withdraw his appearance on behalf of the defendant, citing "total breakdown of communications" with the defendant as a basis for his motion. See filing no. 30 at 1. As of the time of filing of the motion to withdraw, no hearing on damages had been scheduled in this matter. On December 18, 2003, the Court issued a "Notice to Defendant" ("Notice") alerting the defendant that she had until January 8, 2004 to retain replacement counsel or to file a pro se appearance. See filing no. 31. The Notice continued:

> If no attorney appearance or pro se appearance has been filed on your behalf by that date, you may be deemed to have failed to plead or otherwise defend, and plaintiff, United States of America, may move for default and default judgment against you under Fed. R. Civ. P. 55. If a default judgment is entered against you, it may only be set aside in accordance with Fed. R. Civ. P. 60(b).

Id. On April 2, 2004, the Court issued "Endorsement Order [Doc. #30]," granting Attorney Cramer's motion to withdraw. See filing no. 32. The order also reiterated that the United States could move for entry of default and default judgment.

Pursuant to Rule 55(a) and (b), and the Court's Notice and Endorsement Order [Doc. #30], the United States has moved for default and default judgment against the defendant for failure to plead or otherwise defend this suit.

5

**II.  Calculation of Sum Certain Damages and Penalties**

A.  **Fraudulent Transactions Relied on by the Plaintiff**

The plaintiff contends that the plaintiff made hundreds of false claims in this matter. See Complaint, passim; see also Plaza Affidavit, ¶ 12. However, for purposes of its motion for default and default judgment, the United States will limit its damages analysis to the eight fraudulent transactions detailed in the Plaza Affidavit as follows.[2]

During investigative visits by undercover agents to the defendant's store, the defendant refused to conduct EBT Food Stamp transactions directly with the undercover agents, because she did not know them "from the neighborhood." See Plaza Affidavit, ¶ 9. Undercover agents observed illegal trafficking in EBT benefits occurring at the defendant's store on December 4, 2000, and May 3, 2001.  Specifically, they observed the exchange of EBT benefits for a lesser amount of cash occurring at the defendant's store. Id. ¶ 10. In addition, interviews of several Food Stamp recipients confirmed that the defendant personally engaged in illegal trafficking in EBT Food Stamp benefits on at least the following occasions at her store between December 4, 2000, and May 4, 2001:

| Date     | Time     | Amount  |
|----------|----------|---------|
| 12/04/00 | 12:42:00 | $64.10  |
| 01/03/01 | 13:41:20 | $65.25  |

---

[2]  In its motion for summary judgment, the plaintiff provided the Court with a proposal for calculating civil penalties that relied on the defendant's admission in her deposition that she had defrauded the FSP once or twice a week. See Plaintiff's Summary Judgment Memo at 5-8. In its ruling on the plaintiff's motion to alter or amend judgment, however, the Court concluded that the proposed calculus was insufficient for establishing the sum due the United States. See filing no. 27. The plaintiff respectfully contends that its present reliance on only the eight transactions set forth in the Plaza Affidavit is sufficient for the Court to order sum certain damages and penalties in this case.

| | | |
|---|---|---|
| 02/04/01 | 16:35:15 | $30.00 |
| 04/03/01 | 18:28:06 | $64.25 |
| 04/21/01 | 11:36:36 | $36.69 |
| 04/21/01 | 13:55:46 | $50.84 |
| 05/03/01 | 12:43:23 | $87.79 |
| 05/04/01 | 13:25:47 | $88.13 |

Id. Because these transactions involved the exchange of EBT benefits for cash at a discounted rate, and no eligible food items were purchased, these transactions were fraudulent. Id. Moreover, the money for these transactions was electronically transferred to the defendant's account at Fleet Bank.[3] Id. ¶ 11.

## B.    Treble Damages and Mandatory Penalties Under the False Claims Act

The purpose of the False Claims Act is "to provide for restitution to the [G]overnment of money taken from it by fraud." United States v. Hess, 317 U.S. 537, 551 (1943). The statute is intended "to reach all types of fraud, without qualification, that might result in financial loss to the Government." United States v. Neifert-White Co., 390 U.S. 228, 232 (1968). Liability under the False Claims Act occurs where a person or entity

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for approval; [or]
>
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved

---

[3] Before default and default judgment can enter, the Soldier and Sailors' Civil Relief Act of 1940, 50 U.S.C. app § 520, as amended, requires that a movant establish that a defendant is not serving in the United States military. The defendant in the instant matter is not serving in the military. See Plaza Affidavit, ¶ 4.

by the Government.

31 U.S.C. § 3729(a). The False Claims Act provides for "3 times the amount of damages which the Government sustains because of the act[s]" of a defendant. <u>Id</u>. The plaintiff is entitled to the following in False Claims Act damages in this matter:

    Amount of defendant's fraud    $487.05   (8 transactions, <u>see</u> Plaza Affidavit, ¶ 10)

    Multiplied by 3                  x 3

    **Total**                     **$1,461.15**

The False Claims Act also provides for "a civil penalty of not less than $5,000 and not more than $10,000" for each false claim. 31 U.S.C. § 3729(a). Under the Debt Collection Improvement Act of 1996, however, each federal agency is required to make inflationary adjustments to civil monetary penalties within the agency's jurisdiction. 28 U.S.C. § 2461 (note). In August of 1999, the Department of Justice issued a final rule that increased the $5,000/$10,000 penalty range in the False Claims Act to a $5,500/$11,000 penalty range. 28 C.F.R. § 85.3(9). The rule became effective on September 29, 1999, and it applies to violations occurring after that date only. <u>Id</u>. In the instant mater, the defendant's fraudulent conduct occurred after the effective date, <u>see</u> Plaza Affidavit, ¶ 10, and the enhanced penalties are therefore applicable.

The $5,500 minimum/$11,000 maximum penalty provision is not discretionary:

> The imposition of this [penalty] is <u>automatic</u> and <u>mandatory</u> <u>for each claim which is found to be false</u>. The United States is entitled to recover such [penalties] solely upon proof that false claims were made, without proof of any damages.

S. Rep. No. 345, 99th Cong., 2d Sess. 8 (1986), <u>reprinted</u> <u>in</u> 1986 U.S. Code Cong. & Ad. News 5266, 5273 (emphasis added); <u>see also</u> <u>Rex Trailer Co. v. United States</u>, 350 U.S. 148, 152 (1956)

8

("no requirement, statutory or judicial, that specific damages be shown" before imposition of mandatory penalties); <u>United States ex rel. Kreindler & Kreindler v. UTC</u>, 985 F.2d 1148, 1157 (2d Cir. 1993) (in defense contracting fraud case, our court of appeals held that "the number of assertable FCA claims is not measured by the number of contracts, but rather by the number of fraudulent acts committed by the defendant") (citations omitted); <u>United States v. Ehrlich</u>, 643 F.2d 634, 638 (9th Cir. 1981) (if a person causes "a specific number of false claims to be filed, he is liable for an equal number of [penalties]"). Thus, while a court in its discretion may levy a penalty between $5,500 and $11,000 for each false claim, the decision to levy the penalty is not discretionary.

Under the mandatory penalty provision of the False Claims Act, the defendant in the instant matter is liable for a penalty to be set by the Court between **$44,000** (i.e., 8 false claims x $5,500) and **$88,000** (i.e., 8 false claims x $11,000). The plaintiff respectfully urges the Court to impose the maximum penalty for each claim. By her own admission, the plaintiff was aware that it is illegal to exchange food stamp benefits for cash, and she nevertheless engaged in illegal trafficking in food stamp benefits.

**C.    Statutory Interest**

Pursuant to 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court," and the interest is computed from the date of the entry of the judgment. The plaintiff requests that any judgment in this matter also contain an order that interest may accrue pursuant to the provisions of 28 U.S.C. § 1961.

**D.    Damages for Common Law Claims**

In addition to suing under the False Claims Act, the plaintiff brought causes of action for common law fraud and unjust enrichment. Complaint, Counts II & III, respectively. If the Court were

9

to enter default judgment on the plaintiff's False Claims Act claim for damages and mandatory penalties, the plaintiff will forgo its common law claims in this matter.

### III. Conclusion

For all of the foregoing reasons, the Clerk or the Court should grant the plaintiff's motion for default and default judgment for the United States, entering False Claims Act damages of $1,461.15 and a mandatory penalty in an amount not less than $44,000 nor more than $88,000 (for a total judgment not less than $45,461.15 nor greater than $89,461.15). Pursuant to 28 U.S.C. § 1961, interest should also accrue on the amount of the judgment from the date judgment is entered herein. If the Court were to enter default and default judgment in accordance with the plaintiff's False Claims Act claim, the Court may consider the plaintiff's common law claims in this matter as having been withdrawn.

> Respectfully submitted,
>
> PLAINTIFF
> UNITED STATES OF AMERICA
>
> KEVIN J. O'CONNOR
> UNITED STATES ATTORNEY
>
> _____
> WILLIAM A. COLLIER
> ASSISTANT U.S. ATTORNEY
> 450 MAIN STREET, ROOM 328
> HARTFORD, CT 06103
> (860) 947-1101
> FEDERAL BAR NO. ct00986

**CERTIFICATION OF SERVICE**

I hereby certify that a copy of the within and foregoing was mailed, postage prepaid, via first-class mail this 7th day of July, 2004, to:

Ms. Lorna Smith (Woolcock)
939 West Boulevard, 2nd Floor
Hartford, CT 06105

WILLIAM A. COLLIER
ASSISTANT U.S. ATTORNEY

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | CIVIL NO. 3:01CV1881(JBA) |
| v. | : | |
| | : | |
| LORNA SMITH a/k/a LORNA WOOLCOCK a/k/a PATRICIA SMITH, d/b/a MATHER'S DELI, | : | |
| | : | |
| Defendant. | | |

## AFFIDAVIT OF SPECIAL AGENT ANGEL PLAZA

I, Angel Plaza, state as follows under oath:

1. I am over the age of 18, and I know and understand the obligations of an oath.

2. I am a Special Agent with the United States Department of Agriculture, Office of the Inspector General. I am also presently the case agent for this matter.

C. This affidavit is filed in support of the plaintiff's motion for entry of default judgment in this matter.

4. The defendant, Lorna Smith a/k/a Lorna Woolcock a/k/a Patricia Smith, d/b/a Mather's Deli, is not in the United States military. On June 9, 2004, I went to 206 ½ Mather Street in Hartford, Connecticut, the site of a business establishment that was formerly owned by the defendant and known as "Mather's Deli." I spoke with Ms. Lenice Fullwood at that location. She told me that she has owned the business since February of 2004 and that it is now known as "Ray's

**ATTACHMENT A**

Corner Market # 2." Ms. Fullwood also told me that she has known the defendant for about six months and that she last saw the defendant five days ago. She informed me that the defendant is not in the United States military.

5.  The United States brought suit in October of 2001 seeking damages and penalties for defendant's alleged acts of fraud against the Government through the illegal trafficking of food stamp benefits. The United States established the Food Stamp Program ("Program") in order to provide a more nutritious diet for its citizens living in low-income households. The Program is administered by the Food and Nutrition Service ("FNS") of the United States Department of Agriculture.

6.  In 1997-98, the FNS began to replace paper food stamp coupons in Connecticut with electronic benefit transfer ('EBT") cards. EBT cards operate similar to debit cards; at the beginning of each month, a food stamp recipient's card is credited with a dollar amount of benefits for that month. As an eligible purchase is made, the retailer runs the EBT card through the EBT terminal in the authorized retailer's store, and the amount of the purchase is deducted from the recipient's card. In addition, the amount of the purchase is electronically credited to the retailer's bank account, via previous arrangements established between the retailer and the FNS.

7.  Under the requirements of the Program, retail food store owners may not accept food stamp benefits as payment for ineligible items such as alcohol and tobacco products. Moreover, it is illegal for a retailer to exchange food stamp benefits for cash. Such an exchange, usually at a discounted rate, constitutes trafficking in food stamps.

8.  As part of a criminal investigation into food stamp fraud in Connecticut in 2000, federal and state law enforcement personnel began an investigation into food stamp transactions

taking place at Mather's Deli. This investigation was begun based on an analysis of EBT transactions that occurred at the defendant's store, and on the basis of other information. The investigation uncovered that illegal trafficking in food stamp benefits was occurring at the defendant's store. The defendant and her employees participated in widespread and pervasive EBT trafficking, and the money for the fraudulent transactions was electronically transferred to the defendant's account at Fleet Bank.

9. During investigative visits by undercover agents to the defendant's store, the defendant refused to conduct EBT Food Stamp transactions directly with the undercover agents, because she did not know them "from the neighborhood."

10. Undercover agents observed illegal trafficking in EBT benefits occurring at the defendant's store on December 4, 2000, and May 3, 2001. Specifically, they observed the exchange of EBT benefits for a lesser amount of cash occurring at the defendant's store. Moreover, interviews of several Food Stamp recipients confirmed that the defendant personally engaged in illegal trafficking in EBT Food Stamp benefits on at least the following occasions at her store between December 4, 2000, and May 4, 2001:

| Date | Time | Amount |
| --- | --- | --- |
| 12/04/00 | 12:42:00 | $64.10 |
| 01/03/01 | 13:41:20 | $65.25 |
| 02/04/01 | 16:35:15 | $30.00 |
| 04/03/01 | 18:28:06 | $64.25 |
| 04/21/01 | 11:36:36 | $36.69 |

| | | |
|---|---|---|
| 04/21/01 | 13:55:46 | $50.84 |
| 05/03/01 | 12:43:23 | $87.79 |
| 05/04/01 | 13:25:47 | $88.13 |

Because these transactions involved the exchange of EBT benefits for cash at a discounted rate, and no eligible food items were purchased, these transactions were fraudulent.

11. The money for these transactions was electronically transferred to the defendant's account at Fleet Bank.

12. Similar illegal EBT trafficking transactions took place at the defendant's store, at the dates and times and for the amounts indicated on Exhibit B attached to the complaint in this case. Because these transactions involved the exchange of EBT benefits for cash at a discounted rate, and no eligible food items were purchased, those transactions were fraudulent.

13. The money from the transactions detailed in Exhibit B to the complaint was deposited in the defendant's bank account at Fleet Bank.

Executed at New Haven, Connecticut, on this 10th day of June, 2004.

_____
ANGEL PLAZA

Subscribed and sworn to before me on this _____ day of June, 2004.

_____
David J. Sheldon
Assistant United States Attorney
Commissioner of the Superior Court